**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| GREGG HART, Individually and on Behalf of All Others Similarly Situated, ) ) ) | X |
| Plaintiff, ) | Civil Action No. _____ |
| v. ) ) | |
| LIVONGO HEALTH, INC., GLEN E. TULLMAN, CHRISTOPHER BISCHOFF, ZANE BURKE, KAREN L. DANIEL, SANDRA FENWICK, PHILIP D. GREEN, HEMANT TANEJA, TEMPRANILLO MERGER SUB, INC., and TELADOC HEALTH, INC., ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. ) X | **JURY TRIAL DEMAND** |

Plaintiff Gregg Hart ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action on behalf of the public stockholders of Livongo Health, Inc. ("Livongo" or the "Company") against Livongo's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Teladoc Health, Inc. through its wholly-owned subsidiary Tempranillo Merger Sub, Inc. (collectively, "Teladoc").

1

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the United States Securities and Exchange Commission ("SEC") on September 3, 2020.  The S-4 recommends that Livongo's stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Livongo is acquired by Teladoc.  The Proposed Transaction was first disclosed on August 5, 2020, when Livongo and Teladoc announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Teladoc will acquire all of the outstanding shares of common stock of Livongo for $11.33 and 0.5920 shares of Teladoc common stock per share (the "Merger Consideration").  The deal is expected to close by the end of the fourth quarter of 2020.

3.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Livongo's management, and the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley"), Livongo's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Livongo's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Livongo's stockholders.  In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the defendants' violations.

**PARTIES**

5.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Livongo.

6.    Defendant Livongo is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 150 West Evelyn Avenue, Suite 150, Mountain View, California 94041.  Livongo's common stock trades on NASDAQ under the ticker symbol "LVGO."

7.    Defendant Zane Burke ("Burke") has been Chief Executive Officer and a director of the Company since 2019.

8.    Defendant Glen E. Tullman ("Tullman") has been a director of the Company since August 2013 and Executive Chairman of the Board since 2019.  Defendant Tullman, a founder of Livongo, served as Chief Executive Officer from 2014 to 2019.

9.    Defendant Christopher Bischoff ("Bischoff") has been a director of the Company since 2018.

10.    Defendant Karen L. Daniel ("Daniel") has been a director of the Company since 2019.

11.    Defendant Sandra Fenwick ("Fenwick") has been a director of the Company since 2019.

12.    Defendant Philip D. Green ("Green") has been a director of the Company since 2016.

13.    Defendant Hemant Taneja ("Taneja") has been a director of the Company since 2014.

14.     Defendants Burke, Tullman, Bischoff, Daniel, Fenwick, Green and Taneja are collectively referred to herein as the "Board" or "Individual Defendants."

15.     Defendant Teladoc Health, Inc. is a Delaware corporation.  Teladoc Health, Inc.'s principal executive offices are located at 2 Manhattanville Road, Suite 203, Purchase, New York 10577.  Teladoc Health, Inc.'s common stock trades on NYSE under the ticker symbol "TDOC."

16.     Defendant Tempranillo Merger Sub, Inc. is a Delaware corporation and is a wholly-owned subsidiary of Teladoc Health, Inc.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Livongo is incorporated in this District.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Livongo common stock and their successors in interest and/or their transferees, except

defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

21.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of August 3, 2020, Livongo had approximately 99 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

22.     Livongo created and manages platforms to assist consumers with chronic health conditions.  Livongo for Diabetes provides coaching services, monitoring of blood glucose meters, and digital tools for people with both type 1 and type 2 diabetes.  Livongo for Hypertension provides consumers with a connected blood pressure monitor and cuff, coaching and digital tools. Livongo for Prediabetes and Weight Management offers consumers a connected weight scale, personalized coaching, and group classes to help encourage healthy eating and exercise habits. Livongo for Behavioral Health provides therapy services for consumers seeking to treat clinical conditions, manage stress, or sleep better.  The Company has seen tremendous growth, with

revenues increasing more than 550% from $30.8 million in 2017 to $170.1 million in 2019. Livongo went public in July 2019.

23. On August 5, 2020, the Company and Teladoc entered into the Merger Agreement.

24. According to the press release issued on August 5, 2020 announcing the Proposed Transaction:

**Teladoc Health and Livongo Merge to Create New Standard in Global Healthcare Delivery, Access and Experience**

- The only consumer centered virtual care platform for full spectrum of health needs to address accelerating consumer and client demand

- Combination of highly complementary leaders in virtual care and chronic condition management uniquely positioned to unlock the full potential of virtual care

- New high-quality care delivery model creates new category of solutions focused on delivering unrivaled whole-person care for better health outcomes at lower cost

- Significant quantifiable revenue expansion opportunities increase shareholder value as two of the fastest-growing companies in healthcare technology combine

Purchase, NY and Mountain View, CA, August 5, 2020 — Teladoc Health (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied Health Signals company – today announced that they have entered into a definitive merger agreement. This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world. The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.

Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020. Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.

7

The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care. The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent. Demonstrating the power of the combined platform and the scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.

"This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health. "Livongo is a world-class innovator we deeply admire and has demonstrated success improving the lives of people living with chronic conditions. Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman. "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives. This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

**Strategic and financial benefits of the combination**

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery**. By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science; global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes.** The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system. The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery.** Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic conditions or need acute care. By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships.** Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations.** Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity.** Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

9

•    **Significant shareholder value creation and revenue appreciation opportunities.** The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

**Leadership & Governance**
Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

**Additional Transaction Details**
The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

**B.   The Materially Incomplete and Misleading S-4**

25.    The Individual Defendants must disclose all material information regarding the Proposed Transaction to Livongo's stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

26.    On September 3, 2020, defendants filed the S-4 with the SEC.  The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.  However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Livongo's stockholders cannot make a fully informed decision

concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

27.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading.   The S-4 indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed "certain internal financial statements and other financial and operating data concerning Livongo and Teladoc, respectively," as well as "certain financial projections prepared by the managements of Livongo and Teladoc, respectively, which are collectively referred to as financial projections."   Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Livongo's management provided to the Board and Morgan Stanley.

28.     Notably, defendants failed to disclose the long range financial forecasts that were shared with Teladoc on June 30, 2020.   On August 4, 2020, Livongo's Chief Financial Officer presented to the Board three long term financial projections: projections based on current "Wall Street" consensus estimates; projections reflecting management's "base case"; and projections reflection an "optimistic case."   Morgan Stanley was instructed to utilize the "base case" for its fairness opinion.   None of these four projections were disclosed.   Instead, the S-4 disclosed "optimistic" short-term financial projections called "Plan A" and "realistic" short-term projections called "Plan B." The S-4 does not disclose how the Plan A and Plan B forecasts differ from those provided to Teladoc and/or discussed with the Board on August 4, 2020.   Further, the S-4 fails to disclose stock-based compensation, net operating losses, and tax credit carryforwards.

29.     This omitted information is necessary for Livongo's stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Financial Analyses*

30.     The S-4 fails to disclose Morgan Stanley's "Street Case" discounted cash flow analysis of the Company.  The Street Case is only partially based on "street" figures, since they are extrapolated. Consensus figures (second half of 2020 through calendar year 2022) only constitute the minority of the projections, which extend to 2030.  Without the analysis itself or the complete extrapolation and other assumptions, stockholders cannot duplicate the figures or assess the analysis.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

31.     The S-4 also fails to disclose material information concerning the sales process. For example, it was the Chief Financial Officer of the Company that originally met with a Teladoc representative to discuss a potential combination of the two companies.  Yet it was Individual Defendant Tullman who summarized that discussion for the Board, not the Chief Financial Officer nor the Chief Executive Officer.  The S-4 fails to disclose Individual Defendant Tullman's role as Executive Chairman, his responsibilities in that role and his relationship with management of the Company.

32.     On June 13, 2020, the same day in which Teladoc and Livongo first discussed a potential transaction, Livongo's management began discussions with Morgan Stanley for its retention as a financial advisor regarding a potential transaction with Teladoc.  Four days later, the Board approved Morgan Stanley's retention as its "exclusive" financial advisor at a Board meeting.  The S-4 fails to disclose the basis for management to retain a financial advisor so quickly after an initial discussion with Teladoc, as the S-4's description of the initial discussion states nothing to indicate that swiftness was required or even considered prudent:

On June 13, 2020, Mr. Andrew Turitz, Senior Vice President of Corporate Development at Teladoc, and Mr. Lee Shapiro, Chief Financial Officer of Livongo, met to discuss a potential business combination of Teladoc and Livongo. Mr. Turitz discussed the evolving competitive landscape and accelerated demand for longitudinal virtual care for Teladoc's members and how a combination between the two companies could capitalize on an unprecedented opportunity. Mr. Turitz did not make any specific proposals during the conversation and Messrs. Turitz and Shapiro agreed to continue discussing a potential combination, including a meeting between Teladoc and Livongo management to evaluate the strategic rationale for a transaction. Mr. Shapiro subsequently called Mr. Glen Tullman, Livongo's Founder and Executive Chairman, and apprised him of the discussion with Mr. Turitz.

33.    The Board spent that same meeting on June 17, 2020 discussing a potential transaction with Teladoc.  The Board "agreed" that Individual Defendant Tullman and Livongo's management team should continue discussions with Teladoc.  According to the S-4, the Board did not meet again until July 23, 2020.   Yet between June 17, 2020 and July 23, 2020, the two companies entered into a non-disclosure agreement and performed extensive due diligence on each other, Livongo provided Teladoc with its then-current financial forecasts, and the companies "tentatively" agreed to a transaction being announced in early August 2020.  The S-4 does not disclose whether the Board was informed of these milestones as they occurred, or if the Board was consulted before forecasts were sent or tentative agreements made.

34.    Morgan Stanley reviewed its preliminary financial analyses with the Board at various meetings before the Merger Agreement was signed.  Yet those financial analyses were not disclosed.  This includes the certain preliminary perspectives on Teladoc's July 22, 2020 proposal as reviewed with the Board on July 23, 2020; the preliminary financial aspects of Teladoc's July 24, 2020 proposal as reviewed with the Board on July 25, 2020; the certain financial aspects of Teladoc's July 25, 2020 proposal as reviewed with the Board on July 26, 2020; the certain financial aspects of Teladoc's July 26, 2020 proposal as reviewed with the Board on August 1, 2020; the certain financial aspects of Teladoc's July 26, 2020 proposal as reviewed with the Board on August

4, 2020; and the certain financial aspects of Teladoc's August 4, 2020 proposal as reviewed with the Board on August 4, 2020.

35.     The S-4 notes that representatives from Oliver Wyman attended the Board meeting on July 30, 2020.  Oliver Wyman is a "strategic consultant" to the Company, according to the S-4.  At that meeting, Oliver Wyman made a presentation to the Board on strategic options available to the Company, the risks of those strategic options, and the competitive landscape in which the Company operates.  Yet, the S-4 does not disclose any other information about Oliver Wyman, including when they were retained, the basis for retaining Oliver Wyman, their work on the Proposed Transaction, or whether there were any relationships between Oliver Wyman and Livongo, Morgan Stanley, Teladoc, or Teladoc's financial advisor, Lazard Frères & Co. LLC.

36.     Finally, the S-4 notes that Livongo agreed to pay Morgan Stanley $106 million, of which $85 million will be paid when the Proposed Transaction closes.  Morgan Stanley may earn an additional $11 million in a discretionary fee, subject to Livongo's discretion, of course.  The S-4 does not disclose when these fees were agreed to, and the basis for Livongo agreeing to such a high fee given that the Company had paid Morgan Stanley between $10 million and $20 million in fees in the two years prior to Morgan Stanley rendering its fairness opinion.

37.     This information is necessary to provide the Company's stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.  Without all material information, Livongo's stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

38.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

39.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC.  Indeed, as directors of the Company, they were required to do so.  The Individual Defendants, thus, knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

40.     Further, the S-4 indicates that on August 5, 2020, Morgan Stanley reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Livongo's stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

41.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

43.     Defendants have filed the S-4 with the SEC with the intention of soliciting Livongo's stockholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

44.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Livongo, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Livongo shares and the financial analyses performed by Morgan Stanley in support of its fairness opinion; and (iii) the sales process.

47.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and

recommend the Proposed Transaction; indeed, the S-4 states that Morgan Stanley reviewed and discussed its financial analyses with the Board during various meetings including on August 5, 2020, and further states that the Board relied upon Morgan Stanley's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

48.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Livongo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

53.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

18

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Livongo's stockholders unless and until defendants agree to include the material information identified above in any such amendment;

C.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the S-4;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 14, 2020

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*